## Nichols v. Commonwealth.

(Decided December 8, 1922.)

### Appeal from Bell Circuit Court.

1. Criminal Law—Manslaughter—Evidence.—Evidence examined and held that verdict convicting defendant of manslaughter is not flagrantly against the evidence.

2. Homicide—Dying Declarations.—Oral testimony of a dying declaration reduced to writing and signed by the declarant is not incompetent, especially where it is shown the written declaration had been lost.

3. Homicide—Dying Declarations.—Where upon the trial the defendant only objected to such evidence upon the ground that the written declaration alone was competent and even that objection was not ruled upon, the question is waived.

4. Homicide—Self-Defense — Instructions.—The instruction given upon self-defense does not erroneously make the jury the sole judge of whether or not the defendant was in danger of death or great bodily harm from decedent when he shot and killed him.

5. Criminal Law—New Trial—Argument of Counsel.—This court cannot consider an objection to argument of counsel before the jury which appears only in the motion for a new trial.

JOHN HOWARD for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Clarke—Affirming.

In May, 1921, the appellant shot and killed Tom Jones, in Jeff Etter's poolroom in Middlesboro. He was indicted for murder, and after two juries had failed to agree, was convicted upon the third trial of manslaughter, and his punishment fixed at five years' confinement in the penitentiary. His chief ground for reversal of the judgment is that the verdict is flagrantly against the evidence.

The witnesses agree that a short time before the difficulty Jones had been employed in the poolroom to take the position vacated by Joe Williams, a one-legged man, who with William Davis was playing pool on the table nearest the front door when the difficulty occurred; that defendant was standing near the next pool table back from the front door, and decedent was standing at a tool box in the corner of the room near the front door, retipping cues, with the table upon which the game was in progress between them, when defendant said something to decedent about his job. Decedent replied that defendant had better get out and get a job, and the latter said that if he did he would not take a one-legged man's job. Thereupon decedent, with a cue in one hand and a hammer in the other, started toward defendant, saying that he would beat his brains out, and raising the hammer as though he meant to strike defendant with it.

The witnesses further agree that defendant, standing his ground, shot at decedent four times with a pistol; one shot entering the abdomen from the front and piercing the liver; two shots entering decedent's body from the rear, and the fourth missing him.

The witnesses are unable to state which was the first shot that struck decedent, and they do not agree as to the distance the parties were from each other when the shooting began. Defendant states that at the time decedent was within five feet of him, and the other witnesses fix the distance between them at from seven feet to fifteen or twenty steps.

The witness for the Commonwealth who stated that the parties were fifteen or twenty steps apart when the trouble began, states that defendant began shooting as soon as decedent started in his direction, and when he had gone but a step or two from the tool box.

In a dying declaration, admitted over the objection and exception of the defendant, decedent declared that defendant "shot him, but he was not thinking about him shooting him," and "that he was standing at the box putting on cue tips when they shot him, and he was not thinking about them shooting him." If this declaration was competent, as we think it was, it at least tends to prove that the defendant did not shoot in his necessary self-defense, and when it is remembered that two of the three shots struck decedent in the rear and when his back must have been turned toward the defendant, and that one of the witnesses stated the pool table was between the parties when the shooting began, we feel sure that the evidence was such as warranted the jury in believing, as they did, that the defendant was not justified in shooting and killing the decedent upon the ground of self-defense; and while perhaps they might reasonably have come to that conclusion upon the evidence, we certainly can not say that the verdict is so flagrantly against the evidence as to indicate that it resulted from passion or prejudice.

2. The next contention is that the dying declaration, proven orally, was incompetent (1) because it was not shown that it was made under a sense of impending death, and (2) because it was reduced to writing and signed by the declarant, and the written declaration being the best evidence was alone competent.

The proposition of law upon which the second ground of inadmissibility is based is not sound, as was held in

Winstead v. Commonwealth, 195 Ky. 484, upon authorities there cited; and we think it was sufficiently shown that the declaration was made under a sense of impending death; but we need not discuss either of these propositions since the defendant did not object to the introduction of any part of the declaration proved.

The only objection offered to the testimony of this witness was when he was asked, "What did he (decedent) say he was doing, if anything, or whether he was doing anything or not, or starting to do anything?" To this question, "Defendant objects because the written statement is the best evidence." The witness did not answer the question, and the court did not rule on the objection. It is therefore clear that upon the trial the defendant did not object to the declaration upon the ground it was not made under a sense of impending death, which doubtless accounts for the meager proof upon that essential prerequisite, and that the only objection he then offered was neither substantial nor decided, and an exception saved, as is necessary, under all the cases as well as the Code, to bring the question here for review.

3. The only criticism of the instructions is that the one upon self-defense, instead of submitting to the jury the question of whether the defendant believed and had reasonable grounds to believe from the circumstances as they appeared to him that he was in imminent danger of death or great bodily harm when he shot decedent, substituted therefor the judgment of the jury.

If the instruction had done this, it would have been erroneous, as this court has uniformly condemned instructions so formed and frequently ordered reversals because thereof, but the instruction here, while not in the exact language of that prepared and ordered to be given by this court in the case of Austin v. Commonwealth, 28 Ky. L. R. 1087, 91 S. W. 267, relied upon by appellant, is precisely the same in substance. It reads:

"Although you may believe from the evidence to the exclusion of a reasonable doubt that the defendant shot and wounded the deceased with a loaded pistol, so that he soon thereafter died thereby, yet if you shall believe from the evidence that at the time he did so, he believed and had reasonable grounds to believe that he was then and there in danger of death or some other great bodily harm, about to be inflicted on him by the deceased, and that it was necessary or was believed by

the defendant in the exercise of a reasonable judgment to be necessary to so shoot and kill the deceased in order to protect himself from such danger, real or to the defendant apparent, then you ought to acquit the defendant on the grounds of self-defense, or the apparent necessity therefor.''

4. It is finally contended that prejudicial error was committed by the court in overruling defendant's objection to the statement by the attorney for the prosecution in his argument to the jury, that ''the defendant must use the same judgment as a good citizen.'' We do not think this statement, if error, could have been prejudicial to the defendant's substantial rights; but the question is not here, since no reference is made thereto in the bill of exceptions and the fact, if a fact, that such a statement was made or objected to, appears only in the motion and grounds for a new trial. We have uniformly held that this question cannot be raised in this manner. Arnold v. Comth., 194 Ky. 421, 240 S. N. 87.

The record is exceptionally free of errors, and in our judgment contains none prejudicial to the defendant's substantial rights.

Judgment affirmed.